REGAN, Judge.
Plaintiff, Robert Trepagnier, instituted this suit against the Douglas Public Service Corporation, owner of the warehouse designated by the Municipal No. 118 North Front Street in the City of New Orleans, and its liability insurer, Employers Mutual Liability Insurance Company of Wisconsin, endeavoring to recover the sum of $24,-856.58, representing personal injuries, medical and hospital expenses incurred as the result of plaintiff’s fall into the elevator pit of defendant’s warehouse, which occurred on April 19, 1954, when plaintiff was attempting to leave a freight elevator which serviced the office of his employer E. D. Cambon Company, which leased space on the third floor of the warehouse for this purpose.
Defendants answered and generally denied the allegations of plaintiff’s petition, and in the alternative pleaded his contributory negligence. Defendants then instituted a third party complaint against the Otis Elevator Company asserting that by contract it undertook the obligation of maintaining the elevator which the plaintiff insists caused his injuries by its defective movement. Defendants finally pleaded the exceptions of no right or cause of action.
In answer to the third party complaint, the Otis Elevator Company in general denied liability for the accident which resulted in plaintiff’s injuries and also pleaded the exceptions of no right or cause of action.
*233 The New Amsterdam Casualty Company, the compensation insurer of plaintiff’s employer intervened to recover the sum of $1,474.71, representing compensation paid plaintiff and medical expenses incurred by it during the period of April 19 to December 19, 1954.
Otis Elevator Company, defendant in the third party complaint, filed a plea of prescription against the intervenor, New Amsterdam Casualty Company, and in answer to the petition of the intervenor generally denied liability and then pleaded plaintiff’s contributory negligence and assumption of the risk.
Defendants, Douglas Public Service Corporation and Employers Mutual Liability Insurance Company answered the inter-venor, pleading the prescription of one year and generally denied its allegations.
All of the exceptions and pleas of prescription were overruled by the trial court, and the case was tried on its merits.
From a judgment against plaintiff and in favor of the defendants, Douglas Public Service Corporation and Employers Mutual Liability Insurance Company of Wisconsin, dismissing plaintiff’s suit, and in favor of Otis Elevator Company, third party defendant, and against the Douglas Public Service Corporation and Employers Mutual Liability Insurance Company of Wisconsin dismissing the third party complaint, and in favor of Robert Trepagnier, Douglas Public Service Corporation, Employers Mutual 'Liability Insurance Company of Wisconsin and Otis Elevator Company and against the intervenor, New Amsterdam Casualty Company, dismissing the intervention, plaintiff and intervenor have prosecuted this appeal.
The defendants, Douglas Public Service Corporation and the Employers Mutual Liability Insurance Company of Wisconsin, have reurged in this court their exceptions of no cause or right of action, which we pretermit in view of the result which we have agreed should be reached in this case.
Plaintiff, a man 68 years of age, was employed by E. D. Cambon Company, which occupied office space on the third floor of the Douglas Public Service Corporation warehouse. Access to this office was available by either a stairway or use of a freight elevator.
On the day of the accident, Cambon had invited plaintiff to have lunch with him, and they left the office on the third floor and chose to use the elevator, which plaintiff said was there, although Cambon could not remember this fact, despite plaintiff’s assertion that he had called it to Cam-bon’s attention. They rang the bell for the elevator operator, and as he did not respond immediately they entered the elevator, and plaintiff decided to operate it. They both conceded that they used this elevator at least once or twice each day over a period of about a year, and they were the only eyewitnesses to the accident.
Plaintiff related that he manipulated the starting cable so as to cause the elevator to descend to the first floor. When it reached the first floor, he walked to the front of the elevator; the gate, although automatic, was down; he simultaneously lifted the gate and stepped with his right foot off the elevator and on to the ground floor; at this moment the elevator suddenly reversed itself and began to ascend. He was thrown off balance but clung to the gate he had raised to shoulder height as the elevator scraped his back and head. When it passed, he fell into the elevator pit, which was about three or four feet below the level of the ground floor, and sustained a broken ankle and other injuries, which form the subject matter of this suit. Incidentally, it is of interest to note that he, accompanied by Cambon, walked away from the scene of the accident.
Cambon, who remained in the elevator, first ascertained that plaintiff had successfully climbed out of the pit and then returned the elevator to the first floor. In laboriously endeavoring to substantiate plaintiff’s version of the manner in which the accident occurred, he testified that plaintiff was:
*234 “ * * * trying to get off the elevator, and I don’t remember exactly what happened, because the minute I saw him trying to get off, I ran over to the rope; that is, I walked over to the rope, because I was behind him trying to get out with him, you know, but when I saw it go up, I walked over to the rope to stop it and by the time I got to stop it, Trepagnier had fallen in between the elevator and the pit, and he was on his back.”
Plaintiff and his only witness, Cambon, on both direct and cross-examination were obviously evasive when questioned about pertinent details relating to the accident. In fact, the judge of the lower court made a point of emphasizing this several times during the course of the trial. However, no useful purpose would be served by indulging in a protracted discussion of their evasive testimony or by endeavoring to reconcile the respective versions of the manner in which the accident occurred. Suffice it to say that their testimony is predominantly characterized by inconsistencies, vagueness, evasiveness, and a failure to remember what the reasonable man usually remembers.
Plaintiff insists that the elevator was both defective and improperly maintained, which was the proximate cause of his injuries. In substantiation of this assertion plaintiff points to the records of the Mechanical Inspection Section of the Division of Regulatory Inspections, City of New Orleans, and Otis Elevator Company, which he says disclosed that over a long period of time prior to his injury various inspectors had pointed out that the elevator was not equipped with interlocks and had recommended that it be equipped with such safety device. According to the American Standard Safety Code for Elevators, interlocks are automatic electrical connections which keep a gate from being opened when an elevator is absent from a floor where the gate is located; and when an elevator is even with the floor, it prevents the elevator from moving when the gate on that floor is raised.
Plaintiff insists that if this lock had been installed, the accident would not have occurred, because when plaintiff opened the gate to leave the elevator it would automatically have prevented the elevator from moving.
Defendants, on the other hand, maintain that the Code was adopted long after the elevator was installed, was not retroactive, and therefore not applicable; that the Code deals only with present and future installations of elevators and it does not require the use of interlocks on such freight elevators and specifically permits the use of automatic doors similar to those used by Douglas Public Service Corporation. Therefore, the elevators, which were similar to other freight elevators now in use in New Orleans, in all respects fulfill the requirements of the City of New Orleans and were certified to be in safe and proper working condition both by the City and by the Otis Elevator Company inspectors.
The foregoing elucidation reveals that only questions of fact were posed for the trial court’s consideration. The judge thereof obviously did not accept plaintiff’s or Cambon’s improbable version of the manner in which the accident occurred and decided that he had failed to prove his case with that certainty which the law requires. He therefore concluded that the elevator was not defective and that the proximate cause of the accident was the negligent manner in which either plaintiff or Cambon had operated the elevator.
The question which this appeal has posed for our consideration is whether that finding is so erroneous and unsupported by the evidence as to warrant reversal by us.
The evidence preponderates to the effect that the elevator and its gates were not defective, and in our opinion it likewise establishes as a fact that the accident could not nor did it occur in the manner in which plaintiff and Cambon, his only witness, contend that it did.
*235 The photographs of the elevator which appear in the record reveal that the edge of the elevator meets the edge of the floor and leaves little or no space. The same thing is true about the gate on the lower floor, a sketch of which shows that the floor is only VYz" from the elevator platform and the gate is 4" from the edge of the elevator platform. We believe that it is evident that plaintiff could not have fallen between the gate and the elevator platform without having been killed or at least having incurred crushing injuries.
The gate on the first floor was automatic, as was the gate on the seventh floor. When the elevator was down and level with the first floor, the gate was up. When the elevator ascended, the gate closed. Plaintiff conceded that this was true; however, he insisted that on the morning of the accident the automatic apparatus of the gate failed to operate. However, several of the other witnesses who testified related that the gate operated normally before and immediately after the accident. Even Cambon testified that on that day he knew that it was working automatically, because after the accident occurred he brought the elevator down to the first floor and merely walked out of the elevator. If he did so, obviously the gate was working automatically since his exit therefrom was unobstructed.
In view of the fact that the gate was functioning automatically on the day of the accident, it was not necessary for plaintiff to raise the gate if the elevator was at the level of the first floor as he said it was. In addition thereto, plaintiff, a man 68 years of age, could not “easily” have raised the gate to shoulder height as he said he did even if the elevator had been level with the first floor and the gate was down. This is true because the gate on the first floor and incidentally on the seventh floor was not counterbalanced as were the gates on all other floors of the building which were not automatic. The first and seventh floor gates which were automatic were very heavy according to the statements of various witnesses who testified in this respect. Paul G. Merritt, a graduate consulting engineer, appeared and testified on behalf of the defendants that he was fifty years old and that he endeavored to lift the gate when it was down and that it required considerable effort on his part to do so. He also tried to lift the gate when the elevator was in operation, that is, when the car was going down and the gate was going up, and he could not move it faster than the elevator was traveling. The testimony of plaintiff and Cambon consists, as we have said hereinabove, of innumerable evasive answers. For instance, the proper operation of the elevator required the use of a safety lock, which when engaged prevented any movement of the elevator. Plaintiff at first denied any knowledge of the safety device, but finally admitted that he had used it and knew all about it. Cambon likewise denied all knowledge of the safety lock, but he too finally admitted that he had used it. The use of the safety catch by plaintiff or Cambon would have kept the elevator from moving no matter where it was stopped. Plaintiff admitted that he did not use the safety catch when he stopped the elevator shortly before the accident occurred.
The evidence in the record leaves no doubt that the elevator could not reverse itself without a pull on the control cable. The switch which controlled the ascending and descending of the elevator required a movement of twelve inches either way; that is, from a neutral position, the switch had to be pulled down or up a distance of twelve inches in order to start the car. The switch could be pulled only by use of the hand cable, and the evidence indicated that it could not slip.
In the last analysis, we are convinced that this accident did not result from any defect or fault in the elevator, but on the contrary resulted from the improper operation of the elevator by either or both plaintiff and Cambon.
A dispute existed between plaintiff and defendants as to whether plaintiff and Cam-bon had been given permission by Doug *236 las to operate the elevator. However, in view of the conclusion that we have reached we shall not endeavor to reconcile the litigants’ contentions in this respect.
We have repeatedly expressed the opinion that to recover damages for injuries sustained through the alleged negligence of another, the fault and the connection between the fault and the injuries must be shown with reasonable certainty. We are therefore convinced, as the trial judge was, that the plaintiff has failed to prove his case with that certainty which the law requires.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.